IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STATE AUTO PROPERTY AND               )
CASUALTY INSURANCE COMPANY,           )
a mutual insurance company incorporated )
in the State of Ohio                  )
                                      )
         Plaintiff,                   )          Case No.: 2:05-cv-122-F
                                      )
v.                                    )
                                      )
BARBARA CALHOUN, et. al.,             )
                                      )
         Defendants                   )


**<u>MEMORANDUM OPINION</u>**

On February 9, 2005, the plaintiff, State Auto Property and Casualty Insurance

Company (hereinafter "State Auto"), filed this declaratory judgment action against the

defendants Barbara Calhoun (hereinafter "Calhoun"), and Royce C. Abercrombie, as

Executor of the Estate of Milton L. Abercrombie (Doc. # 1, Compl.).  State Auto requests

the Court, pursuant to the Federal Declaratory Judgment Act,  28 U.S.C.A. § 2201[1] *et seq.*,

---

[1] The Declaratory Judgment Act provides:
**(a)** In a case of actual controversy within its jurisdiction, except with respect to
Federal taxes other than actions brought under section 7428 of the Internal Revenue
Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil
action involving an antidumping or countervailing duty proceeding regarding a class
or kind of merchandise of a free trade area country (as defined in section 516A(f)(10)
of the Tariff Act of 1930), as determined by the administering authority, any court
of the United States, upon the filing of an appropriate pleading, may declare the
rights and other legal relations of any interested party seeking such declaration,
whether or not further relief is or could be sought. Any such declaration shall have
the force and effect of a final judgment or decree and shall be reviewable as such.
**(b)** For limitations on actions brought with respect to drug patents see section 505 or

to determine whether it is obligated to defend and indemnify Defendant in the underlying state court action.

This cause is before the court on the Motions for Summary Judgment filed on June 10, 2005 by Defendant Calhoun (Doc. # 11) and by State Auto (Doc. # 14), State Auto's response to Calhoun's Motion for Summary Judgment, filed on June 28, 2005 (Doc. # 21), and the Motion for Default Judgment filed by plaintiff State Auto against defendant Royce C. Abercrombie (Doc. #13). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Court concludes that the Motion for Summary Judgment filed by Calhoun is due to be GRANTED IN PART and DENIED IN PART and the Motion for Summary Judgment filed by State Auto is due to be GRANTED IN PART and DENIED IN PART, and the Motion for Default Judgment filed by State Auto is due to be GRANTED.

## I.  FACTS[2] AND PROCEDURAL HISTORY

The facts are undisputed.

*A.      Underlying State Court Action*

On June 9, 2004, Royce C. Abercrombie, as executor of the estate of Milton L. Abercrombie (hereinafter "decedent") filed a civil action against Calhoun, Max W. Shaw,

---

512 of the Federal Food, Drug, and Cosmetic Act.

28 U.S.C. § 2201.

[2] This recitation of facts is based upon materials presented by the parties.

and Myrtle Shaw in the Circuit Court of Barbour County, Alabama. (Doc. #12 Ex. A). The complaint alleges that on or about November 14, 2003, Calhoun caused a warranty deed to be prepared and executed by decedent conveying certain real estate located in Barbour County, Alabama, to Max W. Shaw and Myrtle Shaw.[3]

The complaint further alleges that (1) decedent lacked the mental capacity to execute a warranty deed on the date in question (Count One), (2) the deed was obtained by undue influence over the decedent (Count Two), and (3) defendants (Calhoun and the Shaws) conspired to acquire the real estate when they knew or should have known decedent was not competent to execute a warranty deed and/or that undue influence was being asserted over decedent to cause him to execute said deed (Count Three).[4] On October 4, 2004, Royce C. Abercrombie filed a First Amended Complaint, re-alleging all claims set forth in the original complaint and adding Counts Six and Seven (Doc. # 12 Ex. B). Count Six alleges that defendants "willfully, wantonly or negligently" caused or allowed decedent to execute the warranty deed when defendants knew or should have known decedent was not competent to execute said deed and defendant Calhoun was acting as an agent for and on behalf of the Shaw defendants. Count Seven alleges that defendants "willfully, wantonly, or negligently" exercised undue influence over decedent, thereby causing him to execute the deed. Both the

---

[3]Max W. Shaw is the nephew of decedent and Myrtle Shaw is the wife of Max Shaw. Defendant Calhoun is the niece of decedent.

[4] Counts Four and Five pertain only to the Shaw defendants, and are therefore not at issue in the present case.

original and amended complaint seek judgment against all defendants, that the deed be set aside, and compensatory and punitive damages.

B.    *Insurance Policy At Issue*

At the time of the execution of the warranty deed, Calhoun had a homeowners insurance policy with State Auto, policy number HDP 4 251 871.[5] The policy contained personal liability coverage that provided, in pertinent part:

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - Personal Liability

If a claim is made or suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which coverage applies, we will:

1.    pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.    provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

(Doc. #16, Ex. A, p. 10 of 16). The policy also contains the following:

## SECTION II - EXCLUSIONS

1.    **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

        a.    which is expected or intended by the **insured**

---

[5]  The policy became effective on May 23, 2003 and continued until November 28, 2003. Therefore, it is undisputed that this policy was in full force on November 14, 2003, the date of the incident at issue (*i.e.* the execution of the deed).

(Doc. #16, Ex. A, p. 11 of 16).  In addition, the policy contains the following definitions:

> 1. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results (Doc. #16, Ex. A, p. 1 of 16).
>
> ***
>
> 5. "**occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in:
> > **bodily injury**; or
> > **property damage**.

(Doc. #16, Ex. A, p. 1 of 4 [Supplemental Provisions]).

> ***
>
> 6. **"property damage"** means physical injury to destruction of or loss of use of tangible property.

(Doc. #16, Ex. A, p. 1 of 16).

Based upon the above provisions, Calhoun has demanded indemnity and defense in the underlying state court action.  State Auto has determined that the policy does not provide coverage for the claims set forth therein.  As a result, State Auto filed this action seeking a declaration of its obligations and liabilities under this policy.

C.    *Motions for Summary Judgment*

On June 10, 2005, Calhoun filed a Motion for Summary Judgment seeking judgment as a matter of law on her complaint for declaratory relief (Doc #11).  As grounds for the motion, Calhoun argues that State Auto is required to defend and indemnify her because the state court action concerns "property damage caused by an occurrence," which is covered under Liability Coverage E of the insurance policy.  Calhoun also argues that the case is not

ripe for a determination on indemnification.  On June 10, 2005, State Auto filed a Motion for Summary Judgment and/or Motion on the Pleadings (Doc #14).  As grounds for the motion, State Auto argues that because the gravamen of the state court complaint against Calhoun alleges intentional acts, it is excluded from policy coverage by the Coverage E exclusion (which excludes coverage for "property damage which is expected or intended by the insured") and therefore State Auto is not required to defend or indemnify Calhoun in this matter.  On June 28, 2005, State Auto filed its response to Calhoun's Motion for Summary Judgment (Doc. # 21), asserting the same arguments set forth in its own Motion for Summary Judgment.

D.      *Motion for Default Judgment*

On June 10, 2005, State Auto filed a Motion for Default Judgment against defendant Royce C. Abercrombie (Doc. #13).  State Auto alleges that defendant Royce C. Abercrombie was served with the complaint on February 9, 2005 and failed to respond to the complaint prior to the March 9, 2005 deadline.  State Auto requests that this court enter a default judgment against defendant Royce C. Abercrombie and grant State Auto the relief it requested in its Motion for Summary Judgment. On June 22, 2005, the Clerk of the Court issued an Entry of Default against defendant Royce C. Abercrombie.

## II. MOTIONS FOR SUMMARY JUDGMENT

*A.     Jurisdiction and Venue*

The court exercises subject matter jurisdiction over this action pursuant 28 U.S.C.

§ 1332, based upon the parties' diversity of citizenship[6] and an amount in controversy

exceeding $75,000.00, exclusive of interest and costs.   The parties contest neither

personal jurisdiction nor venue.

*B.     Summary Judgment Standard*

Summary judgment can be entered on a claim only if it is shown "that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the court is to

construe the evidence and factual inferences arising therefrom in the light most favorable

to the nonmoving party.[7]  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *Mize v.*

*Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

---

[6]  Plaintiff State Auto is an Ohio corporation with its principal place of business in Ohio.
Defendant Calhoun is an Alabama resident.  Defendant Milton L. Abercrombie (represented by
Royce C. Abercrombie , the executor of his estate) was also a resident of Alabama.

[7]  The Supreme Court explained that:
> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against
> a party who fails to make a showing sufficient to establish the
> existence of an element essential to that party's case, and on which
> that party will bear the burden of proof at trial. In such a situation,
> there can be "no genuine issue as to any material fact," since a
> complete failure of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted).

7

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to its claims, and on which it bears the burden of proof at trial. To satisfy this burden, the nonmovant cannot rest on its pleadings, but must, by affidavit or by other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not respond to a motion for summary judgment, the court may grant a motion for summary judgment in favor of the moving party, if defendant's presentation is sufficient to justify the court's conclusion. *Id.*

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which

8

are material on motions for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986); *see also De Long Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499 (11th Cir. 1989).

When a court considers a motion for summary judgment, it is to refrain from deciding any material factual issues.  All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant.  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case."  *Warrior Tombigbee Transp. Co. v. M/V/ Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Consideration of a motion for summary judgment does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with sufficient evidence on each element that must be proved.[8]  *Earley*, 907 F.2d at 1080.  *See*

---

[8] "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, . . . [the court must] grant summary judgment [for the defendant]." *Earley*, 907 F.2d at 1080 (citations omitted).  In *Earley*, the Court of Appeals further emphasized:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;  there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.
>
> ***
>
> If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted) (emphasis added); *accord Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988). *Earley*, 907 F.2d at 1080-81.

9

*Celotex*, 477 U.S. at 322-23.  The nonmoving party need not present evidence in a form

necessary for admission at trial; however, he may not merely rest on his pleadings.

*Celotex*, 477 U.S. at 324.

C.    *Discussion*

In this case, there is no dispute that the subject policy was in effect at the time of

the accident or that Calhoun was the insured under the policy.  Nor do the parties dispute

the contents of the policy itself.  Rather, the parties' dispute is over whether certain

provisions of the policy require State Auto to defend and/or indemnify Calhoun in the

state court action at issue.

1.    *Basic Law*

In general, under Alabama law, the insured bears the burden of establishing coverage

by showing that his or her claim falls within the policy, *see Colonial Life & Accident Ins. Co.*

*v. Collins*, 194 So. 2d 532, 535 (Ala. 1967), while the insurer bears the burden of proving the

applicability of any policy exclusion.  *See U.S. Fidelity & Guar. Co, v. Armstrong*, 479 So.

2d 1164, 1168 (Ala. 1985).  If a policy is ambiguous, it must be construed liberally in favor

of the insured, and exceptions to coverage must be interpreted as narrowly as possible in

order to provide maximum coverage to the insured.  *Altiere v. Blue Cross & Blue Shield*, 551

So. 2d 290, 292 (Ala. 1989).  The language in an exclusionary provision in a policy of

insurance should be given the same meaning "that a person of ordinary intelligence would

reasonably give it." *Western World Ins. Co. v. City of Tuscumbia,* 612 So. 2d 1159, 1161

(Ala. 1992).  However, if the policy is not ambiguous, the insurance contract must be enforced as written; courts should not defeat express provisions of the contract, including exclusions from coverage, by making a new contract for the parties.  *Id.*

    2.    *Duty to Defend*

"An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Ajdarodini v. State Auto Mut. Ins. Co.*, 628 So. 2d 312, 313 (Ala.1993); *Ladner & Co., Inc. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala.1977).  "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.*, 585 So. 2d 1365, 1367 (Ala.1991) (internal citations omitted).  Where the allegations of the complaint show no injury alleged is within the coverage of the policy or where the allegations are ambiguous, "the court is not limited to the bare allegations of the complaint . . but may also look to facts which may be proved by admissible evidence." *Id.*

Calhoun argues that the terms of Section II - Liability Coverages, Coverage E - Personal Liability of the policy require State Auto to defend her in the state court action. That section of the policy requires that a defense be provided for Calhoun in any cases brought against her for claims of "property damage" caused by an "occurrence." The policy defines "occurrence" as an "accident."  She claims that the state court case involves claims

of "property damage" caused by "accident" because some of the claims against her allege negligence, which is accidental in nature.

State Auto counters that the complaint substantially alleges intentional conduct, which is excluded from coverage by Section II - Exclusions, Coverage E - Personal Liability. This section excludes conduct "which is expected or intended by the insured." State Auto argues that where the gravamen of the complaint is excluded conduct (here, the allegations of intentional conduct), additional allegations of negligent conduct do not invoke coverage or constitute an "occurrence." State Auto further argues that the damages alleged in the state court complaint do not constitute "property damage" as defined by the policy, and therefore are not covered by the policy.

There is no question that the policy covers defense of claims based on "property damage caused by an occurrence," but excludes property damage "which is expected or intended by the insured." The Court finds that this exclusion is unambiguous, therefore it must be enforced as written. The alleged "property damage" at issue in the underlying state court action is the transfer of title from the decedent to Max W. Shaw and Myrtle Shaw.[9] The issue is whether the allegations against Calhoun concerning the transfer of title fall within the policy exclusion.

Count Two of the state court complaint alleges that Calhoun exerted undue influence

---

[9] For the sake of argument, the Court assumes, without deciding, that improper transfer of title constitutes "property damage" as defined by the insurance policy.

12

to procure the transfer of title.[10] Under Alabama law, "the undue influence which is required to avoid a conveyance must proceed from some act of dominance or coercion over the will of the grantor.  That is, to constitute undue influence, it must be such as to dominate the grantor's will and coerce his will to serve another's in the act of conveyance." *Orton v. Gay*, 231 So. 2d 305, 310 (Ala. 1970) (internal citations omitted).  Undue influence has also been defined as "influence which renders the grantor the passive agent of the dominating will of another." *Wyatt v. Riley*, 293 So. 2d 288, 291 (Ala. 1974) (citing *Cox v. Parker*, 212 Ala. 35, 101 So. 657 (1924)).  Under either definition, the influencer must affirmatively act in some way as to dominate the grantor's will and coerce him to convey the real estate.  Therefore, the Court finds that a conveyance procured by undue influence is necessarily one that is "expected or intended" by the person exerting the influence, and thus defense against a claim of undue influence is excluded from the coverage of the insurance policy.

Count Three of the state court complaint alleges that Calhoun conspired to wrongfully acquire the real estate from decedent. Under Alabama law, civil conspiracy is by definition an intentional act:

> In order to prove conspiracy, plaintiff must allege and prove that the defendant . . . agreed with at least one coconspirator . . . to accomplish an unlawful end . . . and **intended** to have that unlawful end brought about. . . . One cannot inadvertently become a member of a civil conspiracy. . . . [W]hat is required is that the combiners should have acted *in order that* . . .

---

[10] As stated above, Count One of the state court complaint alleges that the decedent was "of unsound mind and not competent" to execute the deed.  Neither of the parties makes any allegations concerning State Auto's duty to defend on this count, so the Court will not address it.

the plaintiff should suffer damage.

*First Bank of Childersburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996)

(emphasis added).  As the policy excludes defense of claims based on intentional acts, the

Court holds that State Auto is not required to defend Calhoun on the conspiracy charge.

The only other allegations against Calhoun are contained in Counts Six and Seven of

the amended state court complaint.  Count Six alleges that Calhoun "willfully, wantonly or

negligently" caused or allowed the decedent to execute the deed when she knew or should

have known he was not competent to do so.[11]  Count Seven alleges that Calhoun "willfully,

wantonly or negligently" exercised undue influence over the decedent, thereby causing him

to execute the deed, when she knew or should have known she was exercising undue

influence.  These both allege negligent acts, and thus are arguably covered by the "property

damage caused by an occurrence" clause of the insurance policy.  However, if claims in an

underlying action allege both intentional and unintentional acts and the intentional claims are

not severable from the unintentional claims, the insurance company is not required to defend

the insured on the unintentional claims.  *See Auto-Owners Ins. Co. v. Amer. Central Ins. Co.*,

739 So. 2d 1078, 1081(Ala. 1999).  Here, the negligence claims are based on the same

underlying facts as the claims of intentional conduct, and therefore are not severable.  Thus,

State Auto has no obligation to defend Calhoun on the negligence claims, that is, Counts Six

and Seven of the amended state court complaint.

---

[11]  Count Six also alleges that Calhoun was acting as an agent for the Shaw Defendants, but
that allegation is irrelevant to State Auto's duty to defend.

14

Since all allegations against Calhoun are excluded from coverage, the Court finds that State Auto has no duty to defend Calhoun in the underlying state court action.[12]

3.    *Duty to Indemnify*

In addition to her arguments concerning duty to defend, Calhoun argues that the case is not ripe for a determination on the indemnification issue because if she prevails in the state court action, the question of indemnification will never arise.  State Auto's response is that the issue of indemnification is ripe for adjudication because the duty to defend is broader than the duty to indemnify.  Thus, if the court holds that there is no duty to defend, it can be inferred that there is also no duty to indemnify.

While the existence of a duty to defend may be established by the allegations made in the underlying state court complaint, the insurer's duty to indemnify cannot be determined at a preliminary stage in the proceedings.  "[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."  *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995).  This is because the plaintiff in the underlying suit may still change the theory of liability and assert a claim that is covered by the policy at issue.  *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 104 (Ala. 1977).

As this lawsuit has been brought in federal court under the Declaratory Judgment Act,

---

[12] Thus, it is not necessary for the Court to address State Auto's arguments that (1) the claims against Calhoun do not constitute an "occurrence" and (2) wrongful transfer of title does not constitute "property damage" or "bodily injury" as defined by the insurance policy.

the issue of ripeness must be decided in view of the Constitution's restriction of the exercise of federal judicial power to "cases" and "controversies".  U.S. Const. art. III § 2.  The Declaratory Judgment Act, "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision."  *Auto-Owners Ins. Co. v. Toole,* 947 F.Supp. 1557, 1565 (M.D. Ala. 1996)(citing *Aetna Life Ins. Co. V. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461, 463, 81 L.Ed. 617 (1937)).  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id*. at 1566 (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

Additionally, the Declaratory Judgment Act states that a court "*may* declare the rights and other legal relations of any interested party seeking this declaration." 28 U.S.C. § 2201 (emphasis added).  The Supreme Court has characterized the Declaratory Judgment Act as conferring "a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). "There is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court to hear a declaratory judgment action. . . . In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 2888, 115 S.Ct. at 2143 (quoting E. Borchard, Declaratory Judgments 313 (2d ed. 1941)).  District

16

courts are vested with such broad discretion "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id*. at 289, 115 S.Ct. At 2144.

Here, if Calhoun were to prevail in the underlying state court action, the issue of whether State Auto must indemnify Calhoun would be moot, thus the court would never have to reach the issue.   Therefore, the Court holds that the issue of indemnification is not sufficiently ripe to present a "case" or "controversy".   Even if it were ripe, the Court would still, in its discretion, decline to provide declaratory relief.

### III. MOTION FOR DEFAULT JUDGMENT

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default."   Once this has occurred, "the party entitled to a judgment by default shall apply to the court therefor."   Fed. R. Civ. P. 55(b)(2).

On February 9, 2005, State Auto commenced this action against Calhoun and Royce C. Abercrombie (Doc. # 1).   On February 25, 2005, Defendant Calhoun filed an Answer and a Counterclaim against State Auto (Doc. # 5).   On June 10, 2005, State Auto filed a Motion for Default Judgment against Defendant Royce C. Abercrombie (Doc. # 13).   On June 22, 2005, the Clerk of the Court entered a default against him (Doc. # 20).   Because Defendant Royce C. Abercrombie has not appeared in this action by answering the complaint, filing

defensive motions, or offering any response indicating an intent to defend, this Court finds that a default judgment is warranted.  As set forth above in the discussion of the motions for summary judgment, the allegations set forth in the complaint establish that State Auto has no duty to defend Calhoun in the underlying state court action.  Therefore, this Court will enter a default judgment against Defendant Royce C. Abercrombie declaring that State Auto has no duty to defend Calhoun in the underlying state court action.

## IV.  CONCLUSION

For the foregoing reasons, Calhoun's Motion for Summary Judgment is due to be GRANTED IN PART and DENIED IN PART, and State Auto's Motion for Summary Judgment is due to be GRANTED IN PART and DENIED IN PART.  State Auto's Motion for Default Judgment is due to be GRANTED.  Calhoun's claim for indemnification is due to be DISMISSED WITHOUT PREJUDICE.  A separate order will be entered in accordance with this Memorandum Opinion.

DONE this 29th day of September, 2005.


_____
        /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE